**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 18-cv-1462-WJM-KLM

JOHN DOE,

      Plaintiff,

v.

PHILLIP DISTEFANO, Chancellor for the University of Colorado Boulder, and
THE BOARD OF REGENTS FOR THE UNIVERSITY OF COLORADO,

      Defendants.

---

## ORDER GRANTING PARTIAL MOTION TO DISMISS

---

This lawsuit arises out of an investigation by the University of Colorado at Boulder (the "University") into alleged sexual misconduct by Plaintiff John Doe ("Doe") and Doe's ultimate expulsion from the University as a result of the investigation. (ECF No. 11.) Doe brings claims against University Chancellor Phillip DiStefano ("DiStefano") and the Board of Regents for the University ("Board of Regents") (together, "Defendants") for breach of contract, breach of the implied covenant of good faith and fair dealing, estoppel, and violation of due process provisions of the United States constitution under 42 U.S.C. § 1983, and seeks a declaratory judgment for alleged violations of the due process provisions of the United States and Colorado Constitutions. (ECF No. 11 ¶¶ 96–149.)

Defendants filed a partial motion to dismiss (the "Motion") Doe's common law contractual claims and his Colorado constitutional claim. (ECF No. 14.) In response, Doe withdrew his claims under the Colorado Constitution. (ECF No. 20 at 2.) For the

reasons discussed below, the Court dismisses some of Doe's common law contractual claims with prejudice, and some without prejudice.

## I. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted."  The 12(b)(6) standard requires the Court to "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff."  *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).  In ruling on such a motion, the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"  *Id*. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice."  *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotation marks omitted).  "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'"  *Id*. (quoting *Twombly*, 550 U.S. at 556).

## II. BACKGROUND

The Court assumes the following to be true for purposes of Defendants' Motion.

### A.  Investigation & Expulsion

As of April 2016, Plaintiff was a student at the University and a member of the Phi Kappa Psi fraternity.  (ECF No. 11 ¶¶ 1, 60.)  In early April 2016, a female

undergraduate student ("Complainant") attended a party at the Phi Kappa Psi house and thereafter reported to officers of the Boulder Police Department ("BPD") that she had possibly been drugged and had sex that she did not remember with someone, whom she later identified as Doe. (*Id.* ¶¶ 63–69.)[1] On April 11, 2016, the BPD reported allegations of possible drugging and sexual assault of Complainant to the University's Office of Institutional Equity and Compliance ("OIEC"). (*Id.* ¶ 70.)[2]

In late September 2016, OIEC obtained a redacted copy of the BPD report. (*Id.* ¶ 73.) On September 30, 2016, OIEC issued a Notice of Investigation to Doe alleging sexual misconduct with Complainant in violation of Section G2 of OIEC's rules. (*Id.* ¶ 75.) OIEC investigated the allegations by speaking with 23 witnesses and reviewing documentation in the form of text messages, a video, materials and information from the investigation by the BPD and Boulder County District Attorney, and an examination by a Sex Assault Nurse Examiner. (*Id.* ¶ 79.) On January 24, 2017, OIEC produced a final report that concluded that it was "more likely than not" that Doe engaged in nonconsensual sexual intercourse with Complainant. (*Id.* ¶¶ 84, 85.h.) As a result of these findings, the University expelled Doe in February 2017. (*Id.* ¶ 1.)

## B.    The University's Policies

Consistent with its Title IX obligations, the University has adopted policies and procedures for investigating and adjudicating alleged sexual misconduct. (*Id.* ¶ 52;

---

[1] It is unclear exactly when the party occurred. The dates in the Amended Complaint suggest that the party was held from April 2–3 or April 3–4, 2016. (ECF No. 11 ¶¶ 62, 69.b.)

[2] Here, too, the timeline is unclear. The Amended Complaint states that OIEC received the report about "the April 13, 2016, allegations" on April 11, 2016, a factual impossibility. (ECF No. 11 ¶ 70.)

ECF Nos. 11-1 (Process and Procedures 2015–2016, effective July 1, 2015) & 11-2 (Process and Procedures 2016–2017, effective July 1, 2016).)  These documents set forth prohibited conduct, the investigatory process, and disciplinary actions for engaging in prohibited conduct.  (ECF No. 11 ¶¶ 53–59.)

The cover page of Process and Procedures 2015–2016 ("2015–2016 Policy") states that it is an "interim document and any material changes shall be published on or before January 1, 2016."  (ECF No. 11-1 at 1.)  The cover page of Process and Procedures 2016–2017 ("2016–2017 Policy") states that the document is "intended to provide general information to members of the university community" and "is not intended to, nor does it, create a contract between the OIEC or [the University] and community members."  (ECF No. 11-2 at 1.)

The Amended Complaint does not state which of the two policies applies, or whether any "material changes" to the 2015–2016 Policy were published before January 1, 2016.  Doe's response to the Motion states that OIEC employed the procedures listed in the 2016–2017 Policy in its investigation of Doe, although Doe contends that OIEC should have used the 2015–2016 Policy.  (ECF No. 20 at 5.)  Throughout the Amended Complaint, Doe jointly refers to the two policies as "OIEC Process," and does not distinguish between them.  (ECF No. 11 ¶¶ 53–56.)

### III. ANALYSIS

A.   **Breach of Contract (Claim IV) and Breach of Implied Covenant of Good Faith (Claim V)**

Doe appears to allege three bases for his breach of contract claim: Article I of the Law of the Regents and the two OIEC policies.  The Court will address each in turn.

4

Under Colorado law, a party attempting to recover on a claim for breach of contract must prove the existence of a contract.  *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992).  Thus, if the Court finds that no valid contract existed between the parties, Plaintiff's claim for breach of contract will fail.

Policies promulgated in a manual or guidance document by an institution can, under some circumstances, form the basis for claims of breach of implied contract or promissary estoppel.  *See Adams Cnty. Sch. Dist. No. 50 v. Dickey*, 791 P.2d 688, 695 (Colo. 1990).  While such claims frequently arise in the employment context, courts have applied the same principles to university policies governing student conduct and disciplinary proceedings.  *See, e.g.*, *Neal v. Colo. State Univ.-Pueblo*, 2017 WL 633045, at *26 (D. Colo. Feb. 16, 2017).  An individual seeking to establish that a manual or policy guide resulted in a contract must establish that the writer's actions "manifested to a reasonable person an intent to be bound by the provisions of the manual or handbook."  *Geras v. Int'l Bus. Mach. Corp.*, 726 F. Supp. 2d 1292, 1296 (D. Colo. 2010); *Peru v. T-Mobile USA, Inc.*, 897 F. Supp. 2d 1078, 1086–87 (D. Colo. 2012).

"[A] conspicuous and unambiguous disclaimer refutes any implied contract obligations."  *Sidlo v. MillerCoors, LLC*, 718 F. App'x 718, 730 (10th Cir. 2018).  To determine whether a disclaimer is clear, Colorado courts consider, among other more employment-specific factors, whether the policy is labeled, where the disclaimer appears in the document, and whether the policy is signed by the parties.  *Id.* (citing *Winkler v. Bowlmor AMF*, 207 F. Supp. 3d 1185, 1190 (D. Colo. 2016)).

Vague policy pronouncements in policy documents are usually an insufficient basis for a breach of contract claim. *Belgasem v. Water Pik Tech., Inc.*, 457 F. Supp. 2d 1205, 1220 (D. Colo. 2006). "General commitments to equal opportunity and fairness . . . are too vague to be legally enforceable." *Id.*; *see CenCor, Inc. v. Tolman*, 868 P.2d 396, 398 (Colo. 1994) ("Contract claims that in fact attack the general quality of educational experiences provided to students have generally been rejected."). For example, in *Belgasem*, the court found that general policy pronouncements of the company's values were not enforceable, but language urging employees to report violations and guaranteeing non-retaliation was sufficiently definite. *Belgasem*, 457 F. Supp. 2d at 1220.

### 1.   Article I of the Laws of the Regents

Doe contends that the University failed to comply with Article I of the Law of Regents by failing to, among other things, act in good faith, "communicate ethical standards of conduct through instruction and example," fulfill obligations to provide notice and due process, be "personally accountable for individual actions such as overriding the Complainant's request for privacy," or permit a fair inspection of investigative records. (ECF No. 11 ¶ 132.b.)

The University moves to dismiss the allegations that it failed to comply with Article I of the Law of Regents because the alleged failures of the University to be "fair, unbiased, equitable, ethical, or the like, these aspirations are too vague to form contracts." (ECF No. 14 at 6 (internal quotation marks omitted).) Doe does not respond to the University's argument, and thus it is effectively conceded for purposes of this motion.

Moreover, while the text of Article I of the Law of Regents is not before the Court, general commitments to fairness and other ethical aspirations are generally too vague to be legally enforceable.  *See Belgasem*, 457 F. Supp. 2d at 1220.  Doe's own wording of his breach of contract claim based on the Law of Regents suggests that he attempts to enforce assurances that are too vague to form the basis of a contract.  (ECF No. 11 ¶ 132.b.)  In addition, Doe has not provided any facts to support a claim that the Law of Regents forms a contract between the University and Doe.  Given the complete lack of allegations as to the existence of a contract, and the suggested vague and aspirational nature of the commitments in such a contract (if any), the Court dismisses Doe's contract claim based on the Law of Regents without prejudice.

     2.     2016–2017 Policy

Defendants contend that the 2016–2017 Policy was not a contract and therefore Doe's breach of contract claim should be dismissed.  (ECF No. 15 at 5.)  The 2016–2017 Policy contains an explicit disclaimer on the cover page that it "is not intended to, nor does it, create a contract" between the University and community members.  (ECF No. 11-2 at 1.)  *See Sidlo*, 718 F. App'x at 730 ("conspicuous and unambiguous disclaimer refutes any implied contract obligations").  Doe does not suggest that he signed the 2016–2017 Policy.  *See id.*  Considering the factors set forth in *Sidlo* and *Winkler*, the Court concludes that the 2016–2017 Policy contained an explicit disclaimer and could not reasonably be understood as a contract between the University and Doe.  *See Sidlo*, 718 F. App'x at 730; *Winkler*, 207 F. Supp. 3d at 1190. Therefore, the 2016–2017 Policy cannot form the basis of a contract claim.  The Court therefore dismisses the breach of contract claim, and corresponding breach of implied

covenant of good faith and fair dealing claim, based on the 2016–2017 Policy.  *See Carnation Bldg. Servs., Inc. v. City & Cny. of Denver*, 2011 WL 6940474, at \*5 (D. Colo. Dec. 29, 2011) (dismissing a breach of good faith and fair dealing claim where no valid contract existed).

3.     2015–2016 Policy

Defendants also contend that the 2015–2016 Policy was not a contract and therefore Doe's breach of contract claim should be dismissed.  (ECF No. 15 at 5.) However, the 2015–2016 Policy does not contain the same express disclaimer language as the 2016–2017 Policy.  Instead, the 2015–2016 Policy cover page states that it is an "interim document and any material changes shall be published on or before January 1, 2016."  (ECF No. 11-1 at 1.)  Defendants do not cite any cases or attempt to explain how labeling a policy as "interim" is a "conspicuous and unambiguous" disclaimer of implied contractual rights.  Absent an express disclaimer, Doe has stated a plausible claim that the 2015–2016 Policy was a contract between the University and Doe.  *See Neal*, 2017 WL 633045, at \*26.

However, that conclusion does not end the Court's analysis.  Reviewing the Amended Complaint, Doe has not plausibly pled a breach of the 2015–2016 Policy. Doe's Amended Complaint does not distinguish between his breach of contract claims under either policy, or explain why either or both of the OIEC policies apply to his claims.  In addition, the attachments to the Amended Complaint and Doe's response to the Motion make clear that the 2016–2017 Policy governed the procedures that applied to OIEC's investigation, while the 2015–2016 Policy governed the substantive policy. (ECF No. 20 at 5; ECF No. 11-7 at 1, 44.)  *See* Fed. R. Civ. P. 10(c) ("A copy of a

written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

Doe's allegations center on violations of vague commitments to ethical conduct and procedural deficiencies.  (ECF No. 11 ¶¶ 132–36; ECF No. 20 at 3, 9.)  As discussed above, violations of vague aspirational commitments to fair or ethical conduct are not sufficiently definite to be legally enforceable.  *See Belgasem*, 457 F. Supp. 2d at 1220.  In addition, the 2016–2017 Policy—which, as discussed above, is not a contract— governed the procedural aspects of the investigation now challenged by Doe.  Doe does not identify any breach of the substantive provisions of the 2015–2016 Policy, or plead any facts to support a claim that OIEC applied the wrong procedural policy.  Absent any such allegations, Doe fails to plausibly plead that the 2015–2016 Policy applies to his claims, and *ipso facto* he fails to plead a  breach of the 2015–2016 Policy, or of an implied covenant of good faith and fair dealing based on that policy.  *Ridge at Red Hawk*, 493 F.3d at 1177.  The Court thus dismisses Doe's breach of contract claim and breach of good faith and fair dealing claim based on the 2015–2016 Policy without prejudice.

## B.     Promissory Estoppel

In Colorado, a promissory estoppel claim requires: "(1) a promise; (2) that the promisor reasonably should have expected would induce action or forbearance by the promisee or a third party; (3) on which the promisee or third party reasonably and detrimentally relied; and (4) that must be enforced in order to prevent injustice."  *Pinnacol Assurance v. Hoff*, 375 P.3d 1214, 1221 (Colo. 2016).  "Where these

elements are present, a promise becomes binding and may be enforced through the normal remedies available under contract law." *Id*.  A policy document can form the basis for a promissory estoppel claim.  *Trujillo v. Atmos Energy Corp.*, 896 F. Supp. 2d 949, 955 (D. Colo. 2012); *Winkler*, 207 F. Supp. 3d at 1190–91.  If a policy contains a disclaimer of a contractual relationship, an individual cannot reasonably rely on the policies therein to form the basis of a promissory estoppel claim.  *Winkler*, 207 F. Supp. 3d at 1190–91.  In addition, vague promises in a policy cannot form the basis for a promissory estoppel claim.  *Neal*, 2017 WL 633045, at *27.

Doe appears to plead that the University promised that Doe would "not suffer [ ] harassment by fellow students."  (ECF No. 11 ¶ 145.)  Doe has not, however, alleged that any student in fact ever harassed him.  He thus has not plausibly alleged that he detrimentally relied on any such promise by the University.

Doe also alleges that the University promised that it would not deny Doe his procedural rights if accused of a violation of University policy.  (*Id.*)  Defendants argue that Doe has failed to identify any unambiguous promise to support a promissory estoppel claim.  (ECF No. 14 at 9–10.)  In response, Doe summarily argues that "[the University] has done so."  (ECF No. 20 at 10.)

While Doe does not specifically identify the policies, taking the facts in the light most favorable to Doe, the Court assumes that Doe intends to reference the OIEC policies.  *See Ridge at Red Hawk, LLC*, 493 F.3d at 1177.  Because the 2016–2017 Policy had a clear disclaimer, it cannot form the basis for Doe's promissory estoppel claim against Defendants.  *See Winkler*, 207 F. Supp. 3d at 1190–91.  As for the

2015–2016 Policy, Doe fails to plead that the University violated any particular promise on which Doe relied, nor has Doe addressed how enforcing any promise would prevent injustice.  *See Pinnacol Assurance*, 375 P.3d at 1221.  The Court thus dismisses Doe's promissory estoppel claim based on the 2016–2017 Policy with prejudice and the claim based on the 2015–2016 Policy or any other policy without prejudice.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Partial Motion to Dismiss (ECF No. 14) is GRANTED WITH PREJUDICE as to all claims based on the 2016–2017 Policy, and GRANTED WITHOUT PREJUDICE as to all contractual claims based on any other policy.

Dated this 19th day of March, 2019.

BY THE COURT:

_____
William J. Martinez
United States District Judge